UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GARY TINNEY, et al.,
    Plaintiffs,

v.

CITY OF NEW HAVEN, et al.,
    Defendants.

No. 3:11-cv-1546 (SRU)

**RULING ON MOTIONS TO DISMISS**

**I.**     **Background**

In 2003, the City of New Haven (the "City") administered two separate promotion examinations to fill vacancies in the lieutenant and captain ranks of the New Haven Fire Department. Under the contract between the City and its firefighters' union, the International Association of Firefighters, Local 825 (the "Union"), the written exam counted for 60% of an applicant's score and the oral exam for 40%. Those with a total score above 70% on the exam would pass. After preliminary scoring of the exam revealed that no African American would be eligible for promotion, City officials delayed certification of the results, which was necessary before the test could be used to make promotional decisions. The Civil Service Board ("CSB") conducted five hearings over a two-month period to determine whether to certify the exam results. During the hearings, the only information provided to the CSB and the public were the scores and the race and gender of the recipient of each score. Therefore, the firefighters did not know their own tests scores. At its final meeting on March 18, 2004, the CSB split two-two on the question of certifying the exam. As a result, the promotional lists were not certified.

On July 8, 2004, one Hispanic and nineteen Caucasian candidates filed suit against the City, alleging failure to certify the test results constituted unlawful discrimination on the basis of race. *See Ricci, et al. v. City of New Haven, et al.*, Docket No. 3:04-cv-1109 (JBA). On

September 28, 2006, U.S. District Judge Janet B. Arterton granted defendants' motion for summary judgment, and on June 9, 2008, the Second Circuit affirmed the District Court's decision. *See Ricci v. DeStefano*, 554 F. Supp. 2d 142 (D. Conn. 2006), *aff'd*, 530 F.3d 87 (2d Cir. 2008). On June 29, 2009, the Supreme Court reversed the lower court decision, holding that the Ricci plaintiffs were entitled to summary judgment on their Title VII claim. *Ricci v. DeStefano*, 557 U.S. 557, 593 (2009). The judgment of the Second Circuit was reversed and remanded. On remand, Judge Arterton ordered that the eligibility lists be certified. On November 30, 2009, the CSB complied with Judge Arterton's order. The City then made promotions based on the eligibility lists (the "2009 lists"). Of the twenty-four candidates receiving promotions using the 2009 lists, which included *Ricci* and non-*Ricci* plaintiffs, there were nineteen whites, two Hispanics, and three African Americans.[1]

On October 29, 2009, the plaintiffs in this case, seven African American firefighters who took the 2003 and 2004 promotional exams, filed complaints with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed the complaints on July 13, 2011, citing the Supreme Court's decision in *Ricci*. The plaintiffs then filed this suit on October 7, 2011. Defendants, the City of New Haven and the International Association of Firefighters, Local 825, now move to dismiss the plaintiffs' amended complaint, which was filed on November 2, 2012.

## II.     Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch*

---

[1] A total of forty-two whites, six Hispanics, and eight African Americans passed the examination.

*Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

## III. Discussion

The complaint sets forth four claims, all of which the defendants' motions to dismiss challenge. The viability of each claim will be discussed in turn.

    A. <u>Equal Protection Claim</u>

Plaintiffs claim that the City of New Haven violated their right to equal protection, alleging that the City administered the promotional examinations and insisted on using a promotional process in 2003 that the City knew had an adverse impact on African Americans. Defendants move to dismiss the equal protection claim on the grounds that it is barred by the applicable statute of limitations.

"In section 1983 actions, the applicable limitations period is found in the general or residual state statute of limitations for personal injury actions." *Pearl v. Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (internal quotation and citation omitted). In the District of Connecticut, a section 1983 action is subject to a three-year statute of limitations. *Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir. 1998). Thus, any claim based on a discrete act that occurred prior to October 7, 2008 is time-barred. Plaintiffs argue that they did not have standing to pursue their claim any earlier than they did because, although the City administered the exam in 2003, they had no injury prior to Judge Arterton's 2009 order in the *Ricci* case.

"Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies' and 'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'" *Hein v. Freedom From Religion Foundation Inc.*, 551 U.S. 587, 597 (2007) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). To establish standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched

beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* at 565 n.2 (internal quotation marks omitted).

Plaintiffs' section 1983 equal protection claim is based on allegations of disparate treatment that occurred in 2003 and before. Specifically, plaintiffs claim that the City administered an examination and intended to use a promotional process that it knew had a discriminatory effect on minorities. In 2003, when the City refused to certify the test results because if it did so no African American would be eligible for a promotion, plaintiffs had standing to pursue their equal protection claim. It does not matter that the City refused to certify and promote from the list or that plaintiffs did not know exactly where their names fell on the list. Regardless, the harm to plaintiffs was not hypothetical—no African American was eligible for a promotion under the process established by the City and the Union.

Because plaintiffs' equal protection claim is based on actions taken by the City in 2003, and because plaintiffs had standing to pursue that claim in 2003, it is dismissed as barred by the statute of limitations.

B. Due Process Claim

Plaintiffs also bring a claim pursuant to 42 U.S.C. § 1983 for violation of procedural due process. Plaintiffs allege that the City used

> promotional examinations that it [knew had] a history of discriminatory impact towards minorities and then [made] promotions from eligibility lists that [the City knew had] an adverse impact on minorities, without establishing [the] validity thereof and taking affirmative steps to preclude minority firefighters from challenging [them] . . . .

Am. Compl. at ¶ 127. Like plaintiffs' equal protection claim, this claim—to the extent it is based on allegedly discriminatory promotional examinations—is also based on conduct that occurred in

2003. For the same reason that plaintiffs' section 1983 equal protection claim fails, that portion of this claim fails: it is time-barred.

Furthermore, to show a violation of due process, plaintiffs need to show they had a protected property interest in the promotions they did not receive. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). A property interest exists if there is a "legitimate claim of entitlement" to a specific benefit; there must be "more than a unilateral expectation of it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The City uses a "Rule of Three" in its promotional decisions. For each vacancy, the City must consider the top three candidates on the eligibility list and select at least one of those three. For each successive vacancy, the City retains the two unselected candidates, adds the next candidate on the list, and must choose one of those three candidates. This process is repeated until all vacancies are filled, the list is exhausted, or the list expires. Although this process restricts the City's discretion in filling vacancies, it does not eliminate the City's discretion. No candidate is guaranteed a promotion, even if he is ranked number one on the list; no candidate has a "legitimate claim of entitlement" to a promotion. Therefore, plaintiffs had no property interest protected by the due process clause, and the motions to dismiss are granted on this basis as well.

   C. <u>Title VII Claims</u>

"Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* as amended, prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci*, 557 U.S. at 577. Plaintiffs

claim discrimination by the City and the Union under both disparate treatment and disparate impact theories.

### 1. Disparate Treatment

In Count Three of the amended complaint, plaintiffs allege that the City and the Union disparately treated plaintiffs on the basis of race by

> requiring . . . the use of a promotional process that is known to have an adverse impact towards African-Americans and other minorities by express agreement . . . , the refusal to change that process while knowing that the promotional process continued over many years to have a demonstrated adverse impact on African-Americans and other minorities, while not adequately measuring the skills, knoweldges [sic] and abilities necessary to perform the job . . . .

Am. Compl. at ¶ 130. As a prerequisite for filing suit under Title VII, a plaintiff must first file a timely charge with the EEOC. In Connecticut, Title VII's statute of limitations requires that allegations of discrimination be filed with the EEOC within 300 days of the allegedly unlawful employment action. *See* 42 U.S.C. §2000e-5(e)(1); *Richardson v. Hartford Public Library*, 404 F. App'x 516 (2d Cir. 2010). "A claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

A continuing course of conduct may toll the statute of limitations on a plaintiff's Title VII claim where the alleged violation is comprised of a series of separate acts that collectively constitute one unlawful employment practice. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) ("Under the [course of conduct] exception, a plaintiff who files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations."). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

Discrete discriminatory acts include "failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. These acts are clearly discrete and distinguishable from hostile work environment claims, which "cannot be said to occur on any particular day," but instead occur "over a series of days or perhaps years." *Id.* at 115. Furthermore, discrete acts cannot be brought outside the limitations period, "even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations policy." *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012); *see also Lewis v. City of Chicago*, 560 U.S. 205, 215 (2010).

Accordingly, plaintiffs cannot recover for disparate treatment claims based on conduct that falls outside the limitations period. These include plaintiffs' claims based on the conduct of the City and the Union that occurred in 2003 or prior, such as the establishment of the 60/40 weighting and the use of the written examination. *See Chin*, 685 F.3d at 158 ("If the process by which the Port Authority promoted police officers from its eligibility lists did not materially change within the limitations period . . . then the Port Authority is entitled to treat the process as lawful.").

In addition, plaintiffs cannot show that conduct occurring within the limitations period satisfies the elements of a prima facie case for disparate treatment. "In the context of alleged discriminatory treatment, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz v. County of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010). If a plaintiff can establish a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802 (1973).  If the defendant articulates such a nondiscriminatory reason, the burden shifts back to the plaintiff "to show that [defendant's] stated reason for [the adverse employment action] was in fact pretext."  *Id.* at 804.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Plaintiffs have alleged no facts that raise an inference of discrimination by the City in 2009.  Even if plaintiffs were able to allege facts supporting their claim that the City acted with racial animus in 2009, the City easily rebuts the presumption. The City was ordered by Judge Arterton to certify the list—that conduct was beyond the City's control and was a result of years of litigation during which the City refused to certify the list to ensure that it did not discriminate against African Americans.  *See NAACP v. North Hudson Regional Fire & Rescue*, 665 F.3d 464 (3d Cir. 2011) ("A government employer's compliance with a judicial mandate does not constitute an official policy or employment practice of the employer . . . and it is an *employer's* deliberate discrimination that the disparate-treatment provision of Title VII prohibits.").  Once the list was certified, the City used the list to fill the vacancies outstanding since 2003.  There is no evidence that the City's stated reason for its conduct in 2009 was a pretext for an actual discriminatory purpose.

Plaintiffs have also not alleged any conduct of the Union in 2009 that is actionable under the statute.  A labor union's liability for discrimination prohibited by Title VII is specifically set forth under 42 U.S.C. § 2000e-2(c), which states:

It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex or national origin;

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which

>would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex or national origin; or
>
>(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e-2(c). The complaint fails to allege that, in 2009, the Union did anything to "cause or attempt to cause an employer to discriminate." The City was ordered to certify the list and then promoted from the list. Nothing in the record supports a claim that the Union influenced the City's conduct.

    2. *Disparate Impact*

Count Four of the complaint alleges that the City and the Union's use of the promotional process and promotional examination disparately impacted African Americans. Title VII's disparate impact provision prohibits employment practices that have the unintentional effect of discriminating based on race. *See* 42 U.S.C. § 2000e-2(k)(1)(A)(i). A plaintiff establishes a prima facie violation of Title VII's disparate impact proscription by showing that an employer uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex or national origin. *Id.*

As with the disparate treatment claims, any conduct by the City or the Union that occurred in 2003 is outside of the limitations period. In addition, plaintiffs have not alleged any facts suggesting that the Union violated Title VII within the limitations period. Still, plaintiffs have alleged a prima facie disparate impact claim based on the City's *use* of the list in 2009 to promote non-*Ricci* candidates.[2]

---

[2] Plaintiffs filed their EEOC claim on October 29, 2009, prior to the City's use of the 2009 list and the promotions of the *Ricci* and non-*Ricci* plaintiffs. On the record before the Court, it is difficult to determine whether plaintiffs exhausted their administrative remedies for

The City's use of the 2009 list is a separate actionable "unlawful employment practice" that starts a new clock for filing charges alleging violation of Title VII. *Morgan*, 536 U.S. at 113; *see Briscoe v. City of New Haven,* 2013 WL 4780097, at *15 (D. Conn. Sept. 9, 2013) ("Once promotions were actually made, and [African American firefighter] was denied promotion, a discrete adverse employment decision occurred which was actionable under title VII if not time barred."). Although plaintiffs are barred from pursuing claims based on the City's promotion process and examination, it does not follow that a new violation cannot occur when the City promoted candidates using the 2009 list. "If the [plaintiffs can] prove that the City 'use[d]' the 'practice' that 'cause[d] a disparate impact,' they [can] prevail." *Lewis*, 560 U.S. at 214. To be clear, it is not the certification of the list that is at issue; it is the City's choice to make promotions using that list. The City cannot escape liability for this conduct, if such conduct was in violation of Title VII. Accordingly, the City's motion to dismiss is denied to the extent that the plaintiffs address the Title VII disparate impact claim arising out of use of the promotional exam results in 2009. The plaintiffs' disparate impact claim against the Union fails for similar reasons that their disparate treatment claim against the Union fails—the complaint does not allege any conduct by the Union in 2009 that had a disparate impact on plaintiffs. Accordingly, plaintiff's claims against the Union are dismissed without prejudice to filing an amended complaint within 30 days that sets forth prima facie allegations of disparate impact resulting from the conduct of the Union in 2009. Unless a timely amended complaint is filed, the Union will be dismissed from this case.

D. <u>Alternative Grounds for Dismissal</u>

---

any claims based on conduct that occurred in 2009 and therefore whether the Court has jurisdiction over those claims. Plaintiffs and defendants are invited to address the issue in the future.

Defendants asserted several alternative grounds for dismissal, including the doctrine of laches and the unavailability of the requested relief given the Second Circuit's decision in *Briscoe v. City of New* Haven, 654 F.3d 2000 (2d Cir. 2013), and Title VII's anti-alteration provision, 42 U.S.C. § 2000e-2(*l*). Having considered these arguments, I find them to be without merit.

Defendants argue that plaintiffs' claims should be barred by the doctrine of laches because plaintiffs did not act diligently in pursuing their rights and because their lack of diligence has caused prejudice to the City. "The court must consider whether and when the plaintiffs knew of the misconduct, whether they inexcusably delayed in taking action, and whether defendant was prejudiced by any delay." *Brennan v. Nassau County*, 352 F.3d 60, 64 (2d Cir. 2003). Because the only claim to survive the motions to dismiss arose in 2009 and was asserted within the limitations period, there was no unreasonable delay in taking action nor is there prejudice to the City.

Defendants also argue that the Second Circuit's decision in *Briscoe* bars plaintiffs from receiving the promotions they are requesting. In *Briscoe*, the Second Circuit allowed a disparate impact claim to proceed, but limited the relief "insofar as it may interfere with the relief— present and future—afforded to the *Ricci* plaintiffs." *Briscoe v. City of New Haven*, 654 F.3d 200, 209 (2d Cir. 2011). There is no reason that plaintiffs in this case cannot proceed with their claims under the same constraints on relief.

And finally, defendants argue that Title VII's anti-alteration provision, 42 U.S.C. § 2000e-2(*l*), also bars plaintiffs' claim. Section 2000-e2(l) states, "It shall be an unlawful employment practice for a respondent, in connection with the selection . . . of . . . candidates for . . . promotion, to adjust the scores or, use different cutoff scores for, or otherwise alter the results

of, employment related tests on the basis of race." This section prohibits employers from adjusting scores; it does not limit the claims a court can consider.

## IV. Conclusion

For the reasons stated above, the City's motion to dismiss (doc. # 77) is granted in part and denied in part. The Union's motion to dismiss (doc. # 78) is granted. Counts One, Two, and Three of the plaintiffs' amended complaint are dismissed against both defendants and Count Four is dismissed, without prejudice, with respect to the Union. The City's motion to strike (doc. # 77) is denied without prejudice.

It is so ordered.

Dated at Bridgeport, Connecticut, this 31st day of March 2014.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge